(No. 78-CC-1283–)

CHARLES A. BALEY, Claimant, *v*. THE STATE OF ILLINOIS, Respondent.

*Opinion filed October 14, 1982.*

THOMAS F. HOWARD, SR., for Claimant.

TYRONE C. FAHNER, Attorney General (GLEN LARNER, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

Claimant is a former special agent for the Illinois Bureau of Investigation and was so employed from September 30, 1974, through November 1977. This claim is for overtime pay alleged to be due him.

For the first few months of the above period, Claimant was enrolled at the Illinois State Police Academy receiving training for this position, and in January 1975 he was hired by the IBI as a special agent until he resigned on October 31, 1977.

During pre-appointment interviews, and while at the training academy, Claimant was advised that the position of special agent required an unusual amount of overtime and that the position was not simply an eight-hour per day job. He was also advised that overtime work would not be paid for in cash but that he could take compensatory time off for such overtime up to four days per month. Claimant, with knowledge of these conditions, indicated his readiness to work whatever extra hours were necessary in the job and did in fact work considerable extra hours during his employment without objection.

Claimant's supervisors expected overtime work although the amount was largely within the discretion of each agent and the Claimant's decisions as to the amount of overtime was never questioned by his supervisors.

All of Claimant's requests for compensatory time for overtime work were accepted and granted by the supervisors although it was known by all that no more than four days per month of compensatory time off would be allowed.

Claimant worked 1,432.5 overtime hours, during his period of employment, and having taken 332 compensatory hours of time off, he left the job with 1,100.5 hours of unused accumulated compensatory time. The IBI policy at the time Claimant resigned provided that all unused compensatory time would be forfeited upon resignation.

Claimant's notice of resignation set forth a claim for a lump sum payment for unused vacation time but contained no request for a cash payment for his unused compensatory time. Approximately 10 months after his resignation, Claimant made the claim involved in this case.

The issue in this case is whether there are any rules of the Department of Personnel which provide for payment in cash of unused compensatory time and if not, whether there was any contractual arrangement which would require Respondent to pay cash for unused compensatory time.

There are two Department of Personnel rules in question. Rule 3-320, effective on June 1, 1975, and which remained in effect throughout Claimant's employment with the IBI, is as follows:

"3-320 OVERTIME: For those positions approved by the Director and designated on lists maintained by the Director, authorized work in excess of an approved work schedule shall be overtime. Such work may be compensated for in cash or compensatory time as determined by the agency provided such designation is in accordance with the Fair Labor Standards Act, as amended. Overtime work shall be distributed as equitably as possible among qualified employees competent to perform the services required, when overtime is required, and employees shall be given as much advance notice as possible. Except where required by law, time spent in travel shall not be considered overtime.

Compensatory time, if any is earned hereunder, shall be scheduled at the convenience of the agency after consideration of the employee's preference, but within the fiscal year during which such time was earned. If such compensatory time is not liquidated within the fiscal year during which earned, it shall be liquidated in cash at the end of the fiscal year."

A thorough reading of this rule grants cash compensation for overtime only to such employees who hold positions designated on lists maintained by the director. According to the evidence in this case (Claimant's exhibits Nos. 6 and 7), the position of special agent was never listed among position titles eligible for cash payment for overtime. Actually, there is no authorization in Rule 3-320 for even compensatory time for overtime hours and the evidence in the case was that compensatory time was granted without official sanction of the Department of Personnel and, in fact, was against the rules and regulations of the Department of Personnel.

Rule 3-340 was in effect from November 1, 1972, to June 1, 1975, covering the first four months of the disputed period. Rule 3-340 states as follows:

"3-340 OVERTIME: Authorized work in excess of an approved work schedule shall be overtime. Such work may be compensated for in cash or compensatory time as determined by the Director. Overtime work shall be distributed as equitably as possible among employees competent to perform the services required, and they shall be given as much advance notice as possible. Time spent in travel shall not be considered overtime.

Compensatory time shall be scheduled at the convenience of the employing agency, after consideration of the employee's preference, but within the fiscal year during which the related overtime was worked. If such compensatory time is not liquidated within the fiscal year during which it has been earned, said time must be liquidated in cash at the end of the fiscal year.

The Director shall maintain lists of those positions which are exempt from the payment of overtime in any form.

This rule shall be subject to such modification as may be necessary to comply with such provisions of Public Law 89-601 as may be applicable to positions in the State service. (as revised September 22, 1970)."

This rule is similar to Rule 3-320 except that it mandates cash liquidation of overtime for all positions *except* those on lists maintained by the director. Thus, in Rule 3-320, the director must maintain lists of those positions which are *eligible* for cash overtime and rule 3-340 requires that the director maintain lists of those positions which are *ineligible* for cash overtime.

The lists maintained by the director (Claimant's exhibits Nos. 6 and 7) were lists of those job titles eligible for cash overtime but also contained the words "all other job titles are not eligible for overtime."

Since Claimant's job title is not on the list of those eligible, it is clearly, therefore, listed as ineligible by virtue of the above wording.

It is the opinion of the Court that Claimant's job was not on the list of those eligible for additional payment whether by cash payment or otherwise and Claimant is therefore ineligible to recover the amount he seeks.

Claimant relied upon the case of *McDougall v. State*, 30 Ill.Ct.Cl. 629. In that case, the Claimants were employees of the Department of Law Enforcement as crime scene technicians and were seeking payment for overtime. This Court held that under Rule 3-340 in effect at the time, Claimants were entitled to cash liquidation of uncompensated overtime work. That rule is not the same as the rule in effect at the time of Claimant's employment. At the present time, the director is required to set out specifically which job titles are eligible for cash and which job titles are not eligible for cash and, as has been previously noted, the job title of special agent was never listed as eligible.

Nor has Claimant proved any contractual agreement requiring cash liquidation of overtime hours not otherwise compensated for. In fact, the evidence was to the contrary. The necessity for overtime was made a condition of employment. The restriction that compensatory time would be limited to only four days per month was also made known to Claimant. He admitted that he was told that overtime work would not be paid for in cash. There is a notable lack of evidence of any agreement whatsoever, both prior to Claimant's beginning of em-

ployment and after commencement of his employment that uncompensated overtime would be paid for in cash. Claimant admitted that he had no expectation of any cash payment for overtime. In addition, the IBI had a written policy denying overtime pay, which written policy was encompassed by an IBI general order (Claimant's exhibit No. 3), which exhibit stated: "Personnel will forfeit regular days off and compensatory time not taken before the date of separation."

Claimant has, therefore, not proved any contractual right to cash payment for overtime hours.

Claimant further contends that the State should be estopped from defending this claim on the issue of liability in view of right and justice and cites *Hickey v. Illinois Central Rairoad* (1966), 35 Ill.2d 427, 220 N.E.2d 415, as establishing that the doctrine of estoppel may be applied to actions of the State. The *Hickey* case states that in ordinary situations, estoppel does not apply to the State and that while estoppel may be available under certain circumstances against the State when the State is acting in a proprietary capacity, it is rarely, if ever, applied against the State in its governmental capacity. The State's actions in this case demonstrate in the operation of the Department of Law Enforcement, a governmental capacity.

The Court believes that the Claimant knew, or should have known, of the IBI written policy with regard to forfeiture of unused compensatory time upon separation from State employment. It is the Court opinion that the Claimant, at the time of his acceptance of the position he held, was aware of all of the conditions set forth by Respondent.

It is, therefore, the opinion of this Court that Claimant's claim should be denied. This cause is dismissed.